Doris GEYER, Appellant,

v.

Liliane B. MANKIN, Appellee.

No. 1997–CA–001516–MR.

Court of Appeals of Kentucky.

Dec. 18, 1998.

Michael R. Dowling, Ashland, KY, Garis L. Pruitt, Catlettsburg, KY, for Appellant.

James P. Stavros, Ashland, KY, for Appellee.

Before BUCKINGHAM, DYCHE and GARDNER, Judges.

## *OPINION*

BUCKINGHAM, Judge.

Doris S. Geyer (Geyer) appeals from a judgment of the Boyd Circuit Court dismissing her complaint for personal injury damages alleged to have been caused by an automobile accident and from an order denying her motion for a new trial. We determine that errors were made which merit reversal and a new trial.

On October 4, 1991, a vehicle driven by Geyer was stopped at an intersection on a highway in Ashland when it was struck from the rear by a vehicle driven by Liliane B. Mankin (Mankin). Geyer subsequently filed a complaint against Mankin in the Boyd Circuit Court, claiming injuries to her head, neck, shoulder, back, and legs, and requesting an award of damages for the injuries.

Prior to trial, Geyer moved the trial court for partial summary judgment on the issue of liability only. The record does not indicate that the motion was opposed by Mankin, and the trial court entered an order granting Geyer's motion and awarding her a judgment against Mankin on the issue of liability. The order further stated that the case would be retained on the docket "for further proceedings to determine the Plaintiff's damages, if any."

A jury trial was held in May 1997. Geyer presented evidence of pain and suffering, diminution of her power to earn money, and loss of household services, and she requested the jury to award her damages in that regard.[1] Mankin introduced evidence that Geyer was not wearing a seatbelt at the time of the accident, and Mankin also argued that Geyer failed to mitigate her damages by not following her doctor's advice after the accident.

At the conclusion of the trial, the trial court gave the following instructions to the jury:

### INSTRUCTION NO. 1

Nine or more of the jurors may make a verdict, but less than nine cannot. If nine or more, but less than twelve agree, then all agreeing must sign the verdict. If all agree, then one of your number may sign as "Foreperson."

### INSTRUCTION NO. 2

It was the duty of the plaintiff to mitigate her damages and if you find from the evidence that the Plaintiff failed to do so, you shall reduce any award to the Plaintiff in an appropriate amount.

### INSTRUCTION NO. 3

Though you might find otherwise for the Plaintiff under Instruction No. 6, if you are satisfied from the evidence that the Plaintiff failed to substantially follow her doctor's advice and direction and/or failed to exercise reasonable care to avoid aggravating her injuries or to avoid delaying the healing process, and her failure to do so either aggravated her injury or delayed the healing process, then the Defendant would not be liable for that portion of her injury which she alleges that could have been prevented or minimized had the Plaintiff followed her doctor's direction and advice and/or used reasonable care to avoid aggravating her injury or delaying the healing process thereof.

### INSTRUCTION NO. 4

It was the duty of the Plaintiff, Doris Geyer, to exercise ordinary care for her

---

1. Geyer did not request an award for medical expenses, although she introduced evidence that she incurred medical bills of $6,196.22 as a result of the accident. These expenses had apparently been paid as no-fault benefits.

safety and this general duty including [sic] the duty to exercise ordinary care generally to reduce her own injury.

If you are satisfied from the evidence that the Plaintiff failed to exercise such care to reduce her won [sic] injury, and that such failure was a substantial factor contributing to her injuries sustained in the automobile accident, you shall mark "yes" below, otherwise you shall mark "no."

——— ———

yes no

(Answer only if you answered "yes" to Instruction No. 4)

### INSTRUCTION NO. 5

Having found that the Plaintiff's injuries were caused by the failure of the parties to meet their respective duties, you shall assign to such persons the percentage of fault that you believe from the evidence is assignable to each of them. In assigning such percentages, you shall do so by giving due consideration to the nature of each such person's conduct and the extent of the causal relationship between the conduct and damages, all such percentages must total 100%.

PLAINTIFF, Doris Geyer ———%

DEFENDANT, Liliane Mankin ———%

TOTAL 100%

### INSTRUCTION NO. 6

You will determine from the evidence and award Doris Geyer such sum or sums in damages as you believe from the evidence that she has suffered as a direct result of the accident with Liliane B. Mankin, or any aggravation of any pre-existing injuries made worse by that accident.

(a) For Doris Geyer's mental and physical suffering, including and such suffering she is reasonably certain to endure in the future. Amount $———

(b) For diminution of her power to earn as a result of her injuries sustained as a result of the accident caused by Liliane B. Mankin Amount $———

(c) Loss of household services she is reasonably certain to suffer in the future Amount $———

The jury returned a unanimous verdict finding Geyer at fault under Instruction No. 4, apportioning 100 percent fault against Geyer under Instruction No. 5, and awarding no damages to Geyer under Instruction No. 6. When the trial court denied Geyer's motion for a new trial, this appeal followed.

Geyer raises two issues on appeal. First, she contends that the trial court erred in not granting a new trial due to the failure of the jury to award damages for pain and suffering. She contends that it was undisputed that she incurred $6,196.22 for medical expenses for injuries caused by the accident and that she was entitled to an award of some damages for pain and suffering as a matter of law. Her second argument is that the jury instructions unduly emphasized her duty to mitigate her damages. In this regard, she argues that the court gave three separate instructions to the jury (presumably, Instruction Nos. 2, 3, and 4) concerning her duty to mitigate damages when one instruction would have been sufficient.

 Having examined the record of the trial, we conclude that the trial court erred in not granting Geyer a new trial. The jury returned a verdict finding Geyer to be 100 percent at fault. As Geyer was stopped at an intersection and was struck from behind by the vehicle operated by Mankin, the jury's determination that Geyer was 100 percent at fault is not sustained by sufficient evidence, even if her failure to wear a seatbelt contributed to the injuries that she allegedly suffered. *See* Rule of Civil Procedure CR 59.01(f). If Geyer was injured as a result of this accident, then Mankin's striking Geyer's vehicle in the rear necessarily caused some percentage of fault for Geyer's injuries.

Mankin contends that it is obvious from the verdict "that the jurors did not believe the Appellant [Geyer] was injured as a result of the accident and most certainly was not experiencing any pain." We do not think that the conclusion Mankin draws from the

jury's verdict is so obvious. In fact, it appears equally plausible to us that the jury may have declined to award damages to Geyer because it found her to be 100 percent at fault due to her failure to wear a seatbelt.

We find an additional problem with the jury's verdict assigning 100 percent fault to Geyer. Prior to trial, the trial court awarded Geyer partial summary judgment on the issue of liability. As we noted previously, the court's order granting judgment on the liability issue stated that the case would remain on the docket for further proceedings to determine Geyer's damages, if any. In other words, the trial court determined prior to trial that there was no issue concerning fault and that only the issue of damages remained for the jury. *See* (CR) 56.03, which provides in relevant part that "[a] summary judgment . . . may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." However, the trial court allowed testimony at trial concerning fault on the part of Geyer for failing to wear a seatbelt, and the trial court also allowed the jury to apportion fault in its verdict despite the partial summary judgment in Geyer's favor on the liability issue.

■ In *Wemyss v. Coleman*, Ky., 729 S.W.2d 174 (1987), the Kentucky Supreme Court held as follows:

> [I]f the defendant introduces relevant and competent evidence from which it can be reasonably inferred: (1) that the claimant's failure to utilize an available seat belt was contributory fault in the circumstances of the case, and (2) that such contributory fault, if any, was a substantial factor contributing to cause or enhance the claimant's injuries, the defendant is entitled to have the question of contributory fault submitted to the jury in conformity with the principles set out in the Uniform Comparative Fault Act.

*Id.* at 179. In other words, if there is relevant and competent evidence that the plaintiff was contributorily at fault by failing to wear an available seatbelt and that such fault was a substantial factor in contributing to or enhancing the plaintiff's injuries, then the issue of the plaintiff's fault is submitted to the jury for determination. If the jury determines that the plaintiff has some degree of fault due to failure to wear a seatbelt, the liability of the parties is then determined by their respective degrees of fault. *See* KRS 411.182.

The problem in the case sub judice is that the trial court had awarded summary judgment on the issue of liability to Geyer prior to trial. As liability and fault had been removed as issues in the case by the trial court's partial summary judgment, any question concerning fault on Geyer's part due to her failure to wear a seatbelt became irrelevant. If the trial court intended its judgment to truly resolve the fault issue, then no evidence should have been admitted concerning fault on the part of Geyer nor should the jury have been instructed to apportion any fault, much less 100 percent fault, against her.

■ Part of the problem may have been that the trial court intended its partial summary judgment on the liability issue to be only a partial adjudication of fact concerning the cause of the accident itself. If this was the case, then the court should have stated that it was merely making an adjudication concerning the cause of the accident rather than a judgment on this portion of Geyer's claim.[2] It further appears that there was some confusion concerning whether the issue of the seatbelt defense relates to the mitiga-

---

2. There is a distinction between an "adjudication of facts" by a judge or jury and a "judgment." *See* 7 Bertelsman and Philipps, *Kentucky Practice*, CR 54.01, cmt. 3 at 264 (4 th ed.1984). A judgment adjudicates a claim or claims in a proceeding (CR 54.01), whereas an adjudication of facts determines a factual issue. If the trial court intended the partial summary judgment order to truly be a judgment on the issue of liability, it would have necessarily included a determination that the seatbelt defense was to no avail. If, however, the trial court intended its partial summary judgment order to adjudicate only fault in regard to the accident itself, then it was only an adjudication of facts under CR 56.04 and not a judgment. *See* Bertelsman and Philipps, cmt. 3 at 342. As it was termed a "judgment," we would normally presume that the partial summary judgment adjudicated the issue of liability for Geyer's injuries and that the issue of the seatbelt defense was removed from the case.

tion of damages rather than to fault.[3] As we have noted previously, *Wemyss, supra,* holds that the seatbelt defense is relevant to the determination of fault. *Id.* at 179.

As we have decided that a new trial should be granted in this case due to insufficient evidence to support a verdict finding Geyer 100 percent at fault, we suggest to the trial court that it must determine on remand whether its partial summary judgment does, in fact, determine the liability and fault issue totally in favor of Geyer or whether it merely adjudicates the issue of the cause of the accident itself as a matter of law. If the court intended the partial summary judgment to truly adjudicate the issue of liability, then evidence of Geyer's fault by failing to wear a seatbelt would be inadmissible at trial, and the jury would not be instructed to determine or apportion fault. If, however, the trial court intended its partial summary judgment to be merely an adjudication of the cause of the accident as a matter of law, then the seatbelt defense would be admissible, and the jury should be instructed to determine any fault on Geyer's part for failing to wear a seatbelt.[4]

Furthermore, if the trial court merely intended to adjudicate as a matter of law that Mankin was the sole cause of the accident, then the jury should be so instructed. The trial court failed to do this. However, since there is an issue in this case concerning whether Geyer's condition or injuries were caused by the accident, then the trial court must give a fault instruction relating to Mankin which should include language relating to causation of the injuries.[5] If the jury is instructed in this manner, then it may return a verdict finding that Mankin was not at fault for Geyer's injuries. After returning such a verdict, the jury would not then address the issues of Geyer's fault or damages. In short, the trial court's instructions to the jury were not adequate to advise the jury in this regard, and we cannot presume from the jury's verdict that it necessarily determined that Geyer's injuries or condition were not caused by the accident.

We also note Geyer's complaint that the trial court gave undue emphasis in the jury instructions to her duty to mitigate her damages. Mankin had alleged that Geyer failed to mitigate her damages by not following her doctor's advice.[6] In this regard, the trial court gave the jurors Instruction Nos. 3 and 4.[7] "It is the law in this state that instructions should not give undue prominence to certain facts or issues." *Kavanaugh v. Daniels,* Ky.App., 549 S.W.2d 526, 528 (1977), *citing Croushorn Equip. Co. v. Moore,* Ky., 441 S.W.2d 111 (1969). We suggest to the trial court that there be only one mitigation of damages instruction to the jury when this case is tried again.

3. Prior to the instructions being read to the jury, counsel for the plaintiff objected to Instruction No. 4 and stated that "[t]he case that allows seatbelt to be considered at all said it should be considered in general mitigation——". The trial court later stated that "[i]t's already been established that the defendant is liable for the accident and that's not really what this apportionment instruction goes to. Normally we talk of apportionment of fault and that's what we're doing here but it's apportioning not fault of the accident itself but fault with respect to the resulting damages. So I think I have to give this."

4. Since *Wemyss* was decided, a statute has been enacted creating a duty to wear a seatbelt. KRS 189.125(6).

5. Instructing the jury in this manner is contrary to an instruction given in *Carlson v. McElroy,* Ky.App., 584 S.W.2d 754 (1979). The facts in that case are similar to the facts in the case sub judice in that the plaintiff's vehicle in *Carlson* was rear-ended by the defendant's vehicle while in a parked position. The defendant introduced evidence that the plaintiff was not injured as a result of the accident and that her condition was a result of some other cause. The trial court was held to have properly directed a verdict on the issue of liability and submitted the issue of damages, if any, to the jury. However, since *Wemyss,* the issue of the causation of injuries is determined by the fault instruction in cases involving the seatbelt defense. Thus, the manner of instructing the jury in *Carlson* is not appropriate in this case.

6. Failing to mitigate damages by not following a doctor's advice following an injury is relevant only to the amount of damages and not to fault. *Blair v. Eblen,* Ky., 461 S.W.2d 370, 372 (1970).

7. Since mitigation of damages relates to damages and not to fault, we suggest that the appropriate instruction be placed near the damages instruction and not the fault instructions so as not to confuse the jury as to its use.

The judgment of the Boyd Circuit Court is reversed, and this case is remanded for a new trial.

ALL CONCUR.