Robert L. TETRICK, Appellant,

v.

Betty J. FRASHURE, Appellee.

No. 2002–CA–001402–MR.

Court of Appeals of Kentucky.

Oct. 3, 2003.

Curtis J. Hamilton III, Henderson, KY, for appellant.

Stephen D. Gray, J. Christopher Hopgood, Henderson, KY, for appellee.

Before BUCKINGHAM, GUIDUGLI, and TACKETT, Judges.

## OPINION

BUCKINGHAM, Judge.

Robert L. Tetrick appeals from a judgment of the Henderson Circuit Court following a jury verdict rejecting his claim for personal injury damages suffered in an automobile accident with Betty J. Frashure. The case of *Tuttle v. Perry*, Ky., 82 S.W.3d 920 (2002), which was rendered by the Kentucky Supreme Court after the trial of this case, requires us to reverse and remand the case for a new trial.

On June 20, 1998, Robert L. Tetrick was a passenger in a rented Hyundai Sonata driven by his wife, Marilyn. The vehicle was equipped with seat/shoulder belts as well as with airbags. Betty J. Frashure was driving her vehicle and was attempting to enter the flow of traffic on Highway 41A from a Thornton's gas station. Frashure pulled in front of the Tetrick vehicle, and Marilyn Tetrick was unable to avoid the collision of the two vehicles even though she applied her brakes. Although the impact caused damage to both vehicles, it was not sufficient to cause the Hyundai's airbags to deploy.

Just prior to the accident, the Tetricks had stopped at a McDonald's restaurant to get milk shakes. Marilyn was wearing a seat belt, but Robert was not. Marilyn did not suffer serious injury or require medical care as a result of the collision. On the other hand, as a result of the collision, Robert was thrown forward and to the right, striking the dash, the door, and the pillar between the windshield and the door. He suffered injuries to his left knee, his shoulder, his ribs, and his neck and back. His injuries were sufficient to require medical care.

Frashure acknowledged that her actions caused the accident. Therefore, that issue was not contested at the trial. Rather, Frashure put on expert testimony to show that Tetrick's injuries resulted from his failure to wear a seat belt. The only witness Frashure called in support of her case was Kenneth R. Agent, a civil engineer.

Agent testified that he had a Bachelor's degree and a Master's degree in civil engineering from the University of Kentucky. He stated that he was a registered professional engineer, a member of the Institute of Transportation Engineers, and a member of the National Academy of Science. Agent further testified that he had been affiliated with organizations associated with the National Highway Transportation Safety Board. He also testified concerning his extensive work in the study of motor vehicle accidents, the effect that seat belt use/nonuse has on accidents, and the reports and studies he has published in that field. Over Tetrick's objections, the court accepted Agent as a qualified expert witness. He then testified that Tetrick would not have had the injuries he suffered had he been wearing his seat belt.

Instruction No. 3 given by the court to the jury read as follows:

Defendant, Betty Frashure, has accepted responsibility in contributing to the accident of June 20, 1998, about which you have heard evidence. You shall proceed to Instruction No. 4.

Instruction No. 4 read as follows:

It was the duty of Plaintiff, Robert Tetrick, as a passenger, to wear a properly adjusted and fastened seat belt. You will determine from the evidence and award Robert Tetrick a sum or sums of money that fairly and reasonably compensate him for such of the following damages you believe from the evidence he has sustained as a direct result of the accident, but not by reason of any failure on his part to use a seat belt at the time[.]

Instruction No. 4 was patterned after the form instruction contained in John S. Palmore and Ronald W. Eades, KENTUCKY INSTRUCTIONS TO JURIES, Vol. 2, § 39.02.2 (2003 Cumulative Supplement).

In a unanimous verdict, the jury declined to award any damages to Tetrick. His motion for a new trial was denied, and a final judgment dismissing his complaint against Frashure was entered on May 2, 2002. This appeal followed.

Tetrick raises three issues on appeal, two of which require us to vacate the judgment and remand the case for a new trial. During the cross-examination of Agent by Tetrick's attorney during the trial, Agent was asked to state his hourly rate for testifying. Frashure's attorney objected to the line of questioning, and the court sustained the objection. The ruling was proper at that time under *Current v. Columbia Gas of Kentucky, Inc.*, Ky., 383 S.W.2d 139 (1964).

Approximately four months after the trial, the Kentucky Supreme Court rendered its decision in the *Tuttle* case and overruled the *Current* case on the issue of the admissibility of compensation for expert witnesses. *Tuttle*, 82 S.W.3d at 924. The court in *Tuttle* agreed that "the amount of money a witness is paid for testifying in a particular case is unquestionably disclosable on cross-examination." *Id.* Further, the *Tuttle* court remanded that case for a new trial for that sole reason.

In an attempt to avoid the consequences of the *Tuttle* case, Frashure raises several arguments. First, she attempts to rely on the fact that Tetrick failed to include this issue in his prehearing statement as required under CR[1] 76.03(8). Prior to this case being assigned to this panel for ruling, Tetrick filed a motion with this court seeking leave to argue this issue even though it was added after the prehearing statement was filed. Over Frashure's objections, the chief judge of

---

1. Kentucky Rules of Civil Procedure.

this court entered an order granting Tetrick's motion to add the issue. Thus, her argument is now moot.

■ Frashure's second argument in an attempt to avoid the consequences of the *Tuttle* case relies on the fact that Tetrick neglected to introduce Agent's answer concerning his compensation for testifying into the record by avowal. *See* CR 43.10. Citing *Williams v. Payne*, Ky., 515 S.W.2d 618 (1974), Frashure contends that in the absence of an avowal, an appellate court will not presume the excluded the testimony would have added to the proponent's case. She thus maintains that the absence of an avowal is fatal to Tetrick as to this issue.

■ Frashure's argument is without merit. It was uncontested that Agent was retained as an expert by Frashure. Thus, the absence of an avowal merely goes to the actual dollar amount Agent was paid, not the fact that he was paid. We agree with Tetrick that the purpose of an avowal is to permit a reviewing court access to information needed to consider the trial court's ruling. *See Underhill v. Stephenson*, Ky., 756 S.W.2d 459, 461 (1988). As the *Underhill* court stated, "[w]hen there is sufficient evidence before the reviewing court regarding the issue, an avowal is unnecessary." *Id.* We conclude that Tetrick's failure to have Agent's answer to the compensation question put into the record by avowal is not fatal to his claim under this issue.

■ In another attempt to avoid the consequences of the *Tuttle* case, Frashure argues that the error, if any, was harmless and cannot serve as grounds for a reversal of the judgment. *See* CR 61.01. Tetrick's question sought information concerning Agent's fee for testifying and thus was directly aimed at the issue of Agent's possible bias. The Kentucky Supreme Court made it clear in the *Tuttle* case that error in this regard, even when considered alone, requires the vacating of the judgment. 82 S.W.3d at 922. In light of that decision, such an error cannot be deemed to have been merely harmless. Thus, we vacate and remand for a new trial.

Tetrick next argues that the court erred by giving Instruction No. 4 and failing to instruct the jury to apportion fault among the parties. In support of his argument, Tetrick cites *Wemyss v. Coleman*, Ky., 729 S.W.2d 174 (1987), and *Geyer v. Mankin*, Ky.App., 984 S.W.2d 104 (1998). Tetrick argues that in cases involving the seat belt defense, a party is entitled to have the question of comparative fault submitted to the jury and that Instruction No. 4 improperly failed to do so.

On the other hand, Frashure argues that Instruction No. 4 was patterned after the form instruction in Palmore's jury instruction book and that the form instruction specifically cites to both the *Wemyss* and *Geyer* cases. Further, Frashure argues that the error, if any, amounted to merely one of form and that Instruction No. 4 fairly placed the issue before the jury. Thus, she asserts that any error was merely technical and caused no prejudice to Tetrick. In support of the argument, she cites *Miller v. Miller*, Ky., 296 S.W.2d 684, 687 (1956), wherein the court stated that "[t]echnically incorrect instructions are not grounds for reversal where the rights of the losing party are not prejudiced."

■ First, we note that the instruction given by the trial court was erroneous because it made reference to a duty on the part of Tetrick to wear a seat belt. KRS[2] 189.125(6) provides in relevant part that

**2.** Kentucky Revised Statutes.

"[n]o person shall operate a motor vehicle manufactured after 1965 on the public roadways of this state unless the driver and all passengers are wearing a properly adjusted and fastened seat belt, unless the passenger is a child who is secured as required in subsection (3) of this section." This section of the statute does not impose a statutory duty to wear a seat belt on a passenger in a vehicle.[3]

■ "In the absence of statute it is not our function to declare that the law requires, or that it does not require, the occupants of an automobile to wear seat belts." *Wemyss*, 729 S.W.2d at 179. "[T]he enumeration of specific duties is the exception to the rule, reserved for statutory duties, and the 'general rule for the content of jury instructions' is to couch same in the terms of the general duty[.]" *Id.* at 181, *citing Rogers v. Kasdan*, Ky., 612 S.W.2d 133, 136 (1981). Thus, as there is no statutory duty requiring a passenger in a vehicle to wear a seat belt, the court's instruction, as taken from Palmore's form book, was erroneously given. As the Kentucky Supreme Court stated in the *Wemyss* case:

> [W]here there is no statutory duty, a proper instruction will not specifically refer to a seat belt defense, but will state the general duty to exercise ordinary care for one's own safety, leaving it to the jury to decide from the evidence whether the failure to utilize an available seat belt was a breach of that duty in the circumstances of this case, and, if so, whether such breach was a substantial factor contributing to cause or enhance the claimant's injuries.

*Id.* at 181.

■ Further, we agree with Tetrick that the jury should have been instructed

in accordance with principles of comparative fault. Such is required by the *Wemyss* case. *Id.* at 179. Therefore, we reverse the judgment on this additional ground and remand for a new trial. Further, we direct that in the event of another trial, the trial court fashion the jury instructions in accordance with principles of comparative fault.

■ Tetrick's last argument is that the trial court erred "by permitting Kenneth Agent, a traffic engineer and accident reconstruction expert, to offer medical testimony at trial." As we have noted, Agent testified that Tetrick would not have had the injuries that he did had he been wearing a seat belt. Tetrick argues that this testimony "is clearly a medical opinion" and that the court erred by allowing Agent, a civil engineer, to testify in this regard. *See Hill v. Sextet Mining Corp.*, Ky., 65 S.W.3d 503, 507 (2001).

We disagree with Tetrick's argument that Agent gave a medical opinion. Agent did not testify as to the extent of injuries and their physiological effects on the body. Rather, he testified that the seat belt, by restraining Tetrick's motion on impact, would have prevented the "secondary impact" between Tetrick and the forward interior of the car. Furthermore, this court held in *Bass v. Williams*, Ky.App., 839 S.W.2d 559 (1992), that to qualify as an expert witness concerning the seat belt defense, "the witness must possess sufficient training, special knowledge, or skill to testify on the subject dealing with the effect of non-usage of seatbelts in collisions." *Id.* at 566. Further, the court in *Bass* stated that "[w]hat must be shown is a causal relation between the claimant's

---

**3.** In *Geyer v. Mankin* we stated in a footnote that KRS 189.125(6) created a duty to wear a seat belt. 984 S.W.2d at 108, n. 4. However, that case involved the failure of the driver, not the passenger, to wear a seat belt.

failure to wear a seatbelt and the degree of subsequent injury." *Id.* We agree with the trial court that Agent was qualified to testify as an expert witness on the subject of seat belt use.

The judgment of the Henderson Circuit Court is reversed, and the case is remanded for a new trial.

ALL CONCUR.